

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**FILED**
in the Middle District of
North Carolina

September 19, 2023
3:38 pm

Clerk, US District Court
By: _____ kg _____

No. ___**1:23MJ385**___

IN THE MATTER OF THE SEARCH OF
THE PREMISES LOCATED AT

**504 East Broad Avenue, Suites A-C
Rockingham, NC 28379;
192 Rosalyn Road Rockingham, NC 28379;
Ford F-150 VIN#1FTFW1E51NKD17073;
and
2002 Chrysler Voyager
VIN#1C4GJ25302B736437**

**AFFIDAVIT IN SUPPORT OF SEARCH
WARRANT
APPLICATION**

I, Special Agent Jeffrey Gruppo, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1.      I am a Special Agent with the United States Food and Drug Administration (FDA),

Office of Criminal Investigations (OCI) (hereinafter, "FDA-OCI"), in the Miami Field Office.

As a Special Agent with the FDA-OCI, I am responsible for investigating violations of the Federal

Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*. ("FDCA") and other applicable violations

of Title 18 of the United States Code.  I have been a Special Agent with the FDA-OCI since July

2019. My previous law enforcement experience was with the United States Department of

Defense, Pentagon Force Protection Agency ("PFPA") for eight years as a Special Agent.  During

that time, I spent nearly five years assigned to the Federal Bureau of Investigation's Joint

Terrorism Task Force.  Prior to that position, I worked for PFPA as a Police Officer for

approximately four years.

2.      During my career, I have received extensive training and conducted various types

of investigations including, but not limited to, wire and mail fraud, financial crimes, terrorism

1

violations, as well as threatening communications over wire. I have gained experience executing search and arrest warrants for a variety of federal violations, including violations of the FDCA. I have experience conducting internet-related investigations and am familiar with the tactics and methods people use over the internet to further their criminal activity. I have completed specific training concerning the FDCA and investigating violations of the FDCA.

3.　　This Affidavit is based on my own personal knowledge, training, and experience, as well as my review of documents, reports, and contacts with other agents and government personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. As a result, it does not include each and every fact observed by me or known to the government. I have set forth only those facts that I believe are necessary to establish probable cause.

4.　　I am currently investigating violations of federal criminal laws by Mark Meland who operates under the business names Madison James Research, Copy Proz LLC, and Marks Gun and Ammo (herein after collectively the "Subject Businesses"), as well as other business associates or employees of Meland and the Subject Businesses.

5.　　This Affidavit is offered in support of an Application for a Search and Seizure Warrant for evidence currently being kept, concealed, or located at locations associated with Mark Meland and/or a Subject Business. Meland's residence is located at 192 Rosalyn Road Rockingham, NC 28379 (herein after "SUBJECT RESIDENCE"). The Subject Businesses, described in more detail below, are located at 504 East Broad Avenue, Suites A-C, Rockingham, NC 28379 (hereinafter "SUITE A," "SUITE B," and "SUITE C," respectively; and collectively referred to as the "SUBJECT PREMISES").

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 2 of 66

6.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that evidence of the following violations, collectively referred to herein as the "SUBJECT OFFENSES," will be found at the SUBJECT PREMISES and the SUBJECT RESIDENCE: 21 U.S.C. § 331(a) (introducing or delivering for introduction into interstate commerce any misbranded drug); 21 U.S.C. § 331(c) (receiving or causing the receipt in interstate commerce of a misbranded drug and delivering or proffering the delivery of said drug for pay or otherwise); 21 U.S.C. § 331(d) (introduction of a new drug into interstate commerce without requisite FDA approval); 21 U.S.C. § 331(dd) (failing to register as a food facility with FDA in accordance with 21 U.S.C. § 350d); 21 U.S.C. § 331(k) (the doing of any act with respect to a drug which results in the drug being misbranded while the drug is held for sale and after the drug had been shipped in interstate commerce); 21 U.S.C. § 331(p) (failure to register as a drug manufacturer, or to provide the required list of all drugs produced by a drug establishment, as required by 21 U.S.C. § 360); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 371 (conspiracy to defraud the United States and its agencies and conspiracy to commit an offense against the United States), 21 U.S.C. § 841 (distribution of a Schedule III controlled substance); 21 U.S.C. § 856 (maintaining a drug-involved premises); and 18 U.S.C. § 1956 (money laundering).  There is also probable cause to search the information described in Attachments A for fruits, evidence, and instrumentalities of these crimes, as further described in Attachment B.

## SUBJECT LOCATIONS

7.     The SUBJECT RESIDENCE is the residence of Mark Meland, which is located at 192 Rosalyn Road Rockingham, NC 28379. The property is a two-story single-family residence, gray to beige in color with white trim, and dark exterior shutters. The residence's front door faces

3

Rosalyn Road, and the garage is on the right side of the residence, when facing the front of the house. The street number of the address is affixed to the mailbox, which is located at the end of the driveway along Rosalyn Road.

8.     Records from the North Carolina Richmond County Register of Deeds and Land Records/Mapping Department revealed that SUBJECT RESIDENCE was purchased by Mark Meland on or about January 9, 2023.

9.     The SUBJECT PREMISES are consecutive business suites (A-C) located on the side of the building, with the street address 504 E Broad Avenue Rockingham, NC 28379.  The property is a commercial building with multiple tenants. The building is gray in color and identified by a sign reading "Kays" on the front of the building facing E Broad Ave. SUITES A-C are located along the left side of the building, when facing the building from E Broad Ave, and are the first 3 of 4 units located along that side of the building. Suite D is the 4th suite, which is associated with a wealth management company and is not part of this investigation. A large sign in the parking lot close to E Broad Ave advertises for multiple tenants of the building, including Copy Proz. There is no sign for Marks Gun and Ammo or Madison James Research.

10.     SUITE A is associated with Marks Gun and Ammo, discussed further below. The suite is identified by lettering on the door stating "504 East Broad Ave. Suite A," but no signage to identify a business or occupant. SUITE B has a mailbox affixed to the exterior wall next to the door identifying it at "504 B," but there is no signage to identify an occupant or business owner. SUITE C is identified as by a sign affixed to the door stating "504-C" and "COPY PROZ."

<u><b>VENUE</b></u>

11.     This Court has the authority to issue the search warrant because the properties to be searched are located within in the Middle District of North Carolina. Fed. R. Crim. P. 41(b)(1).

4

12.     The SUBJECT OFFENSES are being investigated in the Eastern District of North Carolina, and venue is proper in that District because "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "Any offense involving the use of the mails . . . may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." *Id.*; *see also, U.S. v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1189 (2d Cir. Mar. 29, 1989) (finding no venue in an FDCA case, in part, due to a lack of evidence "that the juice in question was shipped 'into' the Eastern District of New York. And though the documents revealed many destinations for the juice, including cities in New Jersey, Connecticut, Vermont, and Massachusetts, there was no evidence that in order to reach its destination from Canajoharie, any of the juice traveled 'through' the Eastern District of New York."). As detailed below, the investigation reveals that the SUBJECT RESIDENCE AND PREMISES are located in the Middle District of North Carolina, with probable cause supporting that the SUBJECT OFFENSES involved mailing packages of illegal products through and into the Eastern District of North Carolina.

## APPLICABLE STATUTES AND REGULATORY FRAMEWORK

13.     The FDA is a federal agency of the United States Department of Health and Human Services, which is responsible for protecting the health and safety of the public by enforcing the FDCA.   Among other responsibilities, FDA enforces laws and regulations regarding the manufacture and distribution of drugs, including prescription drugs, shipped or received in interstate commerce, as well as the labeling of such drugs.

5

14. The FDCA defines a "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," "articles (other than food) intended to affect the structure or any function of the body of man," and "articles intended for use as a component of" a drug. 21 U.S.C. § 321(g)(1)(B) and (C) and (D).[1]

15. "Prescription drugs" are drugs that, because of their toxicity and other potential for harmful effects, or the collateral measures necessary for their use, are not safe for use except under the supervision of a practitioner licensed by law to administer such drugs. 21 U.S.C. § 353(b)(l)(A). A drug also is a prescription drug if the FDA requires it to be administered under the supervision of a practitioner licensed by law to administer such drug as a condition of the FDA's approval of the drug. 21 U.S.C. § 353(b)(l)(B).

16. Under the FDCA, a "new drug" is one that has not been generally recognized as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling among experts qualified to evaluate those characteristics. 21 U.S.C. § 321(p)(1). To be lawfully introduced into interstate commerce for commercial distribution, new drugs generally require an approved marketing application, including new drug applications (NDAs) or abbreviated new drug applications (ANDAs). 21 U.S.C. § 355.

17. Under the FDCA, "label" is defined as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling," in turn, is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

---

[1] Objective intent of intended use may be shown by expressions, the design or composition of the article, or by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by persons legally responsible for labeling of the drug or their representatives. 21 C.F.R. § 201.128.

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 6 of 66

18.     The FDCA defines interstate commerce as: "(1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other territory not organized with a legislative body." 21 U.S.C. § 321(b).

19.     "Adequate directions for use" means directions under which a layman can use a drug safely for the purposes for which it is intended. 21 C.F.R. § 201.5.

20.     Because a prescription drug, by definition, is safe for use only under the supervision of a licensed practitioner, there are no directions that could enable a layman to use a prescription drug safely. Therefore, adequate directions for use cannot be written for a prescription drug.

21.     Accordingly, a prescription drug is misbranded if it does not comply with FDA regulations that exempt some prescription drugs from the requirement to bear adequate directions for use. For a drug that is a "new drug" within the meaning of 21 U.S.C. § 321(p), compliance with such regulations requires, among other things, that the drug be approved by FDA for its intended use and that its labeling conform to the terms of that approval. 21 C.F.R. § 201.115; 21 C.F.R. § 201.100(c)(2).

22.     Under the FDCA, upon first engaging in the manufacture, preparation, propagation, compounding, or processing of a drug, every person is required to immediately register with the FDA such person's name, places of business, all such establishments owned or operated by such person, the unique facility identifier of each such establishment, and a point of contact email address. 21 U.S.C. § 360(b)(1) & (c).

23.     The terms "manufacture, preparation, propagation, compounding, or processing" include repackaging or otherwise changing the container, wrapper, or labeling of any drug package in furtherance of the distribution of the drug from the original place of manufacture to the person who makes final delivery or sale to the ultimate consumer. 21 U.S.C. § 360(a)(1).

7

24. Any facility engaged in manufacturing, processing, packing, or holding of food (including dietary supplements)² for consumption in the United States must register with the FDA. 21 U.S.C. § 350d.

25. Under the FDCA, a drug is misbranded if, among other things:

- Its labeling is false or misleading in any particular. 21 U.S.C. § 352(a);

- Its labeling does not bear adequate directions for use, meaning directions under which the layman can use a drug safely and for the purposes for which it is intended. 21 U.S.C. § 352(f); 21 C.F.R. § 201.5.

- It is in package form and it does not bear a label containing the name and place of business of the manufacturer, packer, or distributor. 21 U.S.C. § 352(b). The place of business should include the city and state or country of the manufacturer, packer, or distributor. 21 C.F.R. § 201.1(i).

- It is a prescription drug, and its label fails to bear the statement "Rx only" at any time prior to dispensing. 21 U.S.C. § 353(b)(4)(A).

- It is manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered with FDA, or if it is not included in a list of drugs manufactured by a facility registered with FDA. 21 U.S.C. § 352(o).

26. Under the FDCA, the act of dispensing a prescription drug without a prescription of a practitioner licensed by law to administer such a drug is an act which results in the drug being misbranded while held for sale. 21 U.S.C. § 353(b)(1).

---

² Under the FDCA, the term "food" includes "articles used for food or drink for man or other animals" and "articles used for components of any such article." 21 U.S.C. § 321(f)(1). Under 21 U.S.C. § 321(ff), a "dietary supplement" is defined in relevant part as a product intended to supplement the diet that bears or contains one or more dietary ingredients that is intended for ingestion, not represented for use as a conventional food or as a sole item of a meal or the diet, and is labeled as a dietary supplement. Except for limited purposes, dietary supplements are deemed to be foods within the meaning of the FDCA. 21 U.S.C. § 321(ff).

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 8 of 66

27.     The FDCA prohibits doing and causing the following acts:

- Introducing or delivering for introduction into interstate commerce any drug that is misbranded.  21 U.S.C. § 331(a);

- Introducing or delivering for introduction into interstate commerce any new drug that was not the subject of an FDA-approved drug application under 21 U.S.C. § 355.  21 U.S.C. § 331(d).

- The doing of any act with respect to a drug which results in the drug being misbranded while the drug is held for sale after the drug had been shipped in interstate commerce. 21 U.S.C. § 331(k).

- Receiving a misbranded drug in interstate commerce and delivering or proffering the delivery of said drug for pay or otherwise. 21 U.S.C. § 331(c).

- Failing to register as a drug manufacturer, or to provide the required list of all drugs produced by a drug establishment, pursuant to 21 U.S.C. § 331(p).

- Failing to register as a food facility with FDA in accordance with 21 U.S.C. 350d, pursuant to 21 U.S.C. § 331(dd).

28.     Any person who commits the aforementioned prohibited acts under the FDCA commits a misdemeanor, regardless of any mens rea, punishable by a maximum term of imprisonment of one year.  21 U.S.C. § 333(a)(1).

29.     The aforementioned prohibited acts are felonies punishable by not more than three years in prison when they are committed with intent to defraud or mislead.  21 U.S.C. § 333(a)(2). Intent to defraud or mislead includes acting with intent to defraud or mislead consumers, or the FDA in the exercise of its regulatory authority.

9

## FACTS SUPPORTING PROBABLE CAUSE

30.     The investigation located records from the North Carolina Secretary of State and Richmond County, North Carolina Register of Deeds, which revealed that Mark Meland filed an assumed business name certificate under his name for Copy Proz on or about May 1, 2018. The principal address at the time of filing was "607 A East Broad Ave Rockingham NC 28379."

31.     On or about September 3, 2021, Meland filed an assumed business name certificate under his name for Madison James Research. The nature of business was identified as "supplement research," and the address was listed as "607-A East Broad Ave., Rockingham, NC 28379." The investigation has revealed that Madison James Research is sometimes is also referred to as MJR Labs or MJR Laboratories.

32.     The investigation revealed that Madison James Research and Copy Proz were initially operating out of 607-A East Broad Ave. Rockingham, NC 28379, but have moved to the SUBJECT PREMISES.

33.     On or about May 17, 2022, Meland filed an assumed business name certificate under his name for "Marks Gun + Ammo," (hereinafter "Marks Gun and Ammo"). The principal address at the time of filing was SUITE A.

34.     On or about June 15, 2022, Nancy Hoover Terry ("Terry") registered the assumed business name certificate under her name for Hoover Pilot Car Service. The principal business location is 149 McLeod St. Rockingham, NC 28379.

35.     Terry's residential address is 149 McLeod St. Rockingham, NC 28379, according to her North Carolina driver's license information.

36.     Terry identifies herself as the office manager of "Copy Proz Printing & Copying," according to her publicly viewable Facebook page.[3]

### Website

37.     The investigation linked the website www.madisonjamesresearchchems.com (hereinafter "Subject Website") with Madison James Research. Based on my training and experience, I recognized the Subject Website as an e-commerce website that was offering a variety of FDA-regulated products for sale. The products include drugs, as defined by the FDCA.

38.     The Subject Website markets a number of drugs that appear to lack requisite approvals, including the following which were last reviewed on August 15, 2023:

- "Tadalafil/Sildenafil Capsules" are capsules that were marketed on the Subject Website as containing 25mg each of Tadalafil and Sildenafil). An image of a bottle of this product is displayed on the website. That image indicates that it contains "60 capsules." A "Research Facts" panel on that label displays the "Amount" as "2 Capsules" and the "Amount per Bottle" as "30 Capsules."

---

[3] www.facebook.com/nancyhoover79



4

- "Tadalafil Capsules" are marketed on the Subject Website as the "best Tadalafil capsules that money can buy." Similarly, "Sildenafil Capsules" are marketed as the "best Sildenafil capsules that money can buy."

- "Modanifil,"[5] are capsules marketed on the Subject Website as follows: "Modafinil reduces extreme sleepiness due to narcolepsy and other sleep disorders." The Subject Website also claims that "this medication does not cure these sleep disorders and may not get rid of all your sleepiness. Modafinil does not take the place of getting enough sleep."

- "GLP-1 Semaglutide" is marketed as follows: "it's primary physiologic function is to lower blood sugar levels by naturally enhancing insulin secretion . . . and has been linked with neurotrophic effects in the brain and central nervous system . . . has been shown to significantly decrease appetite by delaying gastric emptying and

---

[4] From Subject Website, product page https://www.madisonjamesresearchchems.com/product/pink-berry-sorbet-birdie-candle/, image captured July 22, 2022.

[5] It is believed that this website page has a misspelling of the product name, due to the correct spelling of the active pharmaceutical ingredient in the description of the product.

reducing intestinal motility." The Subject Website also notes that "GLP-1 research has been in the realm of diabetes treatment/prevention as well as appetite suppression" and that "research focuses on the ability of GLP-1 to stave off neurodegenerative disease."

- "Tamoxifen Capsules" are marketed on the Subject Website as the "best Tamoxifen citrate capsules that money can buy." The Subject Website also notes that "Tamoxifen is a special type of hormone drug called a selective estrogen-receptor modifier or SERM" that "blocks the action of estrogen, so that cells (like some cancer cells) that need estrogen to divide stop growing and die."

- "Finasteride Capsules" are marketed on the Subject Website under the categories "Capsules, Hair Growth, Research Chemicals."

- "Ultimate Hardness Capsules" are marketed on the Subject Website as follows: "Experience the Ultimate Hardness. Made for you. PERFECT for her! Compare to Cialis and Viagra"

- "Injectable 7-Keto DHEA" is marketed on the Subject Website as "Hands down, the best fat removal tool in your medicine cabinet" and is "used to improve lean body mass and build muscle, increase the activity of the thyroid gland, boost the immune system, enhance memory and slow aging" and to "to treat depression, anxiety, and post-traumatic stress disorder (PTSD)."[6]

---

[6] The investigation revealed that the Injectable 7-Keto DHEA and Ultimate Hardness Capsules products were marketed on the Subject Website without any disclaimers that those products were not for human use or for research purposes only, and without disclaimers similar to those mentioned above

39.     Despite marketing the above products and other drugs containing well-known active pharmaceutical ingredients ("API") in capsule and injectable form,[7] the Subject Website (and the labels on the drugs) contains a number of disclaimers that the aforementioned products are not for human use and are for research purposes only.  Among those disclaimers are:

- "This product is intended for laboratory research use only"

- "This product is NOT for human use and can be harmful if ingested"

- "This product is not a drug, food, or cosmetic and should not be misbranded, misused or mislabeled as a drug, food or cosmetic"

- "is intended for educational/informational purposes only"

- "This designation allows the use of research chemicals strictly for in vitro testing and laboratory experimentation only"

- "Bodily introduction of any kind into humans or animals is strictly forbidden by law"

- "Research chemicals are use only to see chemical reactions, solubility test and reagent test."

40.     The website claims purchases can be made using a variety of payment methods, to include: eCheck (through eDebitDirect), Western Union, Zelle, Cash App, Apple Pay, Venmo, Green Dot (MoneyPak) and "secure credit card processing." The latter of which states an invoice will be requested from "HOOVER PILOT CAR SERVICE."

---

[7] The Subject Website also markets several products in powder form marketed as "Research Powders," including Tadalfil, Sildenafil, Tamoxifen, and Finesteride, products marketed as injectable, including the GLP-1 Semaglutide Injectable 7-Keto DHEA, and products marketed in liquid form, including Tadalafil/Sildenafil Combo, Finasteride, and Albuterol.



41.     The investigation revealed that Meland is also associated with the website www.pureresearchlabs.com. This website markets the same and/or similar products to Madison James Research, but the products have labeling with the Pure Research Labs name brand.

42.     The investigation also discovered the website www.lp3health.com, which is associated with Leondas Paul III, an employee of Meland, as described further below. This website markets Madison James Research products, as well as products under the name brand "LP3 Research."

43.     A Facebook profile for Paul shows that he is "friends" with Meland, Terry, and Noah Rasdon, all of whom are affiliated with this investigation. Rasdon is the owner of the business Magic Nutrition[9], and believed to be a large purchaser of products from Meland's

---

[8] Image taken on July 12, 2022.

[9] According to a statement on Rasdon's public Facebook page, facebook.com/profile.php?id=100069511734229

website, based in part on more than $500,000 in bank transactions to Meland's accounts, as discussed further below.

44.     Magic Nutrition was a business in Arkansas that used the now-closed website magicnutritionstore.com.  According to Magic Nutrition's still publicly viewable Facebook page[10] they were a vitamin supplement shop, and were associated with the email address fattofittest@yahoo.com. This email address is further associated with Rasdon, as explained below.  A post on the Facebook page from on or about May 24, 2022, states the business is "closed due to moving to our new location – FITNESS FACTORY." The public Facebook page for Fitness Factory[11] states that it is "HOME OF MAGIC NUTRITION."

## Orange Book and FDA Information

45.     The FDA maintains the publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known, and hereinafter referred to as the "Orange Book"). The publication is publicly available on the FDA's website,[12] and includes a searchable database of drug products approved by the FDA.

46.     The FDA also maintains a publicly available database through their official website, that allows a user to query various information about drug approvals.  This includes new drugs applications (NDAs), and supplemental approvals to NDAs.  This database is commonly known as Drugs@FDA.[13]

47.     According to the Orange Book and Drugs@FDA, the following was noted about the products previously referenced in this affidavit, as last reviewed on August 15, 2023:

---

[10] Facebook.com/magicnutritionsups
[11] Facebook.com/FitnessFactoryVB
[12] https://www.fda.gov/drugs/drug-approvals-and-databases/approved-drug-products-therapeutic-equivalence-evaluations-orange-book
[13] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 16 of 66

- Tadalafil is an active API in several FDA-approved drugs indicated as treatment for erectile dysfunction including a drug marketed under the proprietary name Cialis. Cialis, and the other FDA-approved drugs containing Tadalafil are prescription drugs. There was no match in the Orange Book for any known approved drug application for drugs containing Tadalafil held by Madison James Research or MJR Laboratories.

- Sildenafil Citrate is an API in several FDA-approved drugs indicated for the treatment of erectile dysfunction, including a drug marketed under the proprietary name Viagra. Viagra and the other FDA-approved drugs containing Sildenafil Citrate are prescription drugs. Sildenafil Citrate is also an API in the FDA-approved prescription drug, Revatio, which is indicated for treatment of pulmonary arterial hypertension. There was no match in the Orange Book for any known approved drug application for drugs containing Sildenafil or Sildenafil Citrate held by Madison James Research or MJR Laboratories.

- There was no match in the Orange Book for "Modanifil." However, there were matches for Modafinil, which is an API in several drugs including drugs marketed under the proprietary names Provigil and Nuvigil. Per their labeling, Provigil and Nuvigil are indicated to improve wakefulness in adult patients with excessive sleepiness associated with narcolepsy, obstructive sleep apnea, or shift work disorder. Provigil, Nuvigil and other FDA-approved drugs containing Modafinil, are prescription drugs. The Orange Book did not contain any approved drug application for "Modanifil" or Modafinil marketed by Madison James Research or MJR Laboratories.

- Semaglutide, is an active pharmaceutical ingredient in FDA-approved drugs commonly marketed under the proprietary names Ozempic, Wegovy, and Rybelsus. Ozempic, Wegovy and Rybelsus are prescription drugs. The approved dosage form for Ozempic and Wegovy are as subcutaneous solutions. The approved dosage form for Rybelsus is a tablet. The Orange Book did not contain any approved drug application for the "GLP-1 Semaglutide" marketed by Madison James Research or MJR Laboratories.

- Tamoxifen Citrate, is an active pharmaceutical ingredient in FDA-approved drugs commonly marketed under the proprietary name Soltamox, and previously Nolvadex.[14] Per the labeling, Soltamox is indicated for treatment or adjuvant treatment of adult patients with estrogen receptor-positive metastatic breast cancer, to reduce risk of invasive breast cancer following breast surgery and radiation in adult women with ductal carcinoma in situ, and to reduce the incidence of breast cancer in adult women at high risk. Soltamox and other FDA-approved drugs containing Tamoxifen Citrate are prescription drugs. The Orange Book did not contain any approved drug applications for a Tamoxifen product sponsored by Madison James Research, MJR Laboratories, or similar names.

- Finasteride, is an active pharmaceutical ingredient in a number of drugs, including drugs marketed under the proprietary names Proscar, Propecia, and Entadfi. Entadfi and Proscar are indicated for the treatment of benign prostatic hyperplasia ("BPH") in men with an enlarged prostate. Propecia is indicated for the treatment of male pattern hair loss. All FDA-approved drugs containing Finasteride for oral

---

[14] Nolvadex is a discontinued product.

18

consumption are prescription drugs. The Orange Book did not contain any approved drug applications for a Finasteride product sponsored by Madison James Research, MJR Laboratories, or similar names.

- Testosterone Enanthate is an API in several FDA approved drugs, which are all prescription drugs. It was also an API in the now discontinued drug known by the proprietary name Delatestryl. The Orange Book did not contain any approved drug applications for a Testosterone Enanthate product sponsored by Madison James Research, MJR Laboratories, or similar names.

- The Orange Book did not contain any reference to any drug approvals held by MJR Laboratories or by Madison James Research.

- There was no approved drug, intended for humans, in the FDA Orange book containing the API Clenbuterol. However, Clenbuterol Hydrochloride is an ingredient in the animal drug sold under the proprietary name Ventipulmin Syrup[15].

48.     Additionally, the Drug Enforcement Agency publishes the *Lists of Scheduling Actions, Controlled Substance, Regulated Chemicals,*[16] which is also referred to as an "orange book." According to the publication dated July 2023, Testosterone (17β-hydroxyandrost-4-en-3-one), which includes Delatestryl, is a Schedule III controlled substance. Modafinil is listed as a Schedule IV controlled substance.

**Undercover Purchases**

49.     On or about July 15, 2022, your affiant used a fictitious name and undercover email address (hereinafter "UC email address") to make a purchase of products (hereinafter "UC

---

[15] This reference is from the FDA Green Book, which is similar to the Orange Book, and contains references to FDA approved veterinary medicines: https://animaldrugsatfda.fda.gov/adafda/views/#/home/previewsearch/140-973

[16] https://www.deadiversion.usdoj.gov/schedules/orangebook/orangebook.pdf

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 19 of 66

purchase 1") through the Subject Website. The purchase included "MK-677" and "Modanifil." A prescription or doctor's information was not required to complete the purchase and no such prescription or information was ever provided. The payment method chosen for the purchase was "secure credit card processing."

50.     After placing the order, the UC email address received a purchase confirmation email, identified as order number 34203.

51.     An invoice from Hoover Pilot Car Service was received as a web link, via text message to a UC phone number. The link was for an invoice generated through the payment service PaymentsHub. The invoice number was 34203 and referenced the purchase as "Madison James Research – Base Price," without providing an itemized list of products purchased. The invoice provided Terry's residence as an address for Hoover Pilot Car Service. A payment was made though this service using a UC credit card.

52.     On or about July 25, 2022, your affiant retrieved a package from a UC commercial mailbox, that had been shipped interstate via the United States Postal Service, from North Carolina to Florida. The return address on the package was "C.P. 607A East Broad A[sic] Rockingham NC 28379." [17] The shipping label was affixed to a USPS padded envelope, which contained a USPS box, which contained another USPS envelope that was used to wrap around the items from UC purchase 1.

53.     The package contained black bottles separately labeled "Modanifil" and "MK-677," each containing capsules. The label on both bottles indicated branding of "MJR Laboratories." Further, there was no other branding or manufacturer of the capsules listed on the bottle. The bottle labeled "Modanifil" listed the "research ingredients" as "Modafinil." The

---

[17] The label was smudged during shipping and the street name was partially unreadable.

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 20 of 66

product labels did not display the statement "RX only."  None of the labels or labeling included in this package contained any directions for use.  The images below are of the items as they were received.  The products displayed the name "MJR Laboratories."  However, the immediate containers did not contain the place of business of the manufacturer, packer or distributor.





54.     Your affiant believes the initials "C.P." on the return address are for the business Copy Proz, which was located at the same address.

55.     On or about February 24, 2023, your affiant received information from the FDA Forensic Chemistry Center ("FCC") regarding testing on products from UC purchase 1.  The

21

analysis by FCC revealed the capsules from the bottle labeled "Modanifil" contained Tamoxifen and Finasteride. There was no Modafinil found in the capsules.

56. On or about February 7, 2023, your affiant made an undercover purchase of products (hereinafter "UC purchase 2") from the Subject Website. The purchase included the products GLP-1 Semaglutide 10mg, Tadalafil/Sildenafil capsules, and Modanifil capsules. A prescription was not required to complete the purchase and no prescription was provided. The order was identified as number 37900. Similar to UC purchase 1, an invoice number 37900 from Hoover Pilot Car Service was later received at the UC email address and payment was made by a UC credit card.

57. On or about February 14, 2023, your affiant received the products from UC purchase 2. The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida. Tracking records show the package passed through the Eastern District of North Carolina, with a stop at a USPS distribution center in Fayetteville, North Carolina. The return address on the package was "C.P. 607A East Broad Avenue Rockingham NC 28379." The contents of the package were shipped using the same modus operandi of packing the products in USPS shipping materials, as with UC purchase 1.

58. The Tadalafil/Sildenafil and Modanifil products were shipped in black plastic bottles and the GLP-1 Semaglutide was a white powder in a glass ampule. None of the labels for these three products displayed an "RX only" statement. The labels on all three products were branded as "MJR Laboratories." Further, there was no other branding or manufacturer of the capsules listed on the bottle. None of the labels or labeling for these three products contained any directions for use. Despite the Tadalafil/Sildenafil product being marketed in capsule form, the bottles contained various disclaimers similar to those described above in paragraph 36, including

"Research Compound Not for Human Consumption." The GLP-1 Semaglutide did not contain any such disclaimer on the product label. The images below are of the items as they were received. The products displayed the name "MJR Laboratories." However, the immediate containers did not contain the place of business of the manufacturer, packer, or distributor.

 

 

 

59.     Beginning on or about July 31, 2023, your affiant, using an undercover identity, communicated with madisonjamesresearch@gmail.com, while using the UC email address. Madisonjamesresearch@gmail.com stated that the owner or operator of the website lp3health.com "works for me in my printshop so I let him earn some extra money!"

60.     During the email exchange, madisonjamesresearch@gmail.com initially offered a source for "test,"[18] and then offered to sell the product directly at 10 bottles (10ml each) for $200. Madisonjamesresearch@gmail.com stated they could send a credit card invoice if your affiant could place a purchase for an equivalent price of products through the Subject Website. However, the "test" would be shipped in lieu of the products ordered. No doctor's prescription was required or submitted for the purchase of products from the website, or for the "test."

61.     On or about August 2, 2023, as instructed by madisonjamesresearch@gmail.com, your affiant placed a purchase for two bottles of Tadalafil/Sildenafil and two bottles of Tamoxifen

---

[18] Based on my knowledge and experience, I recognize that "test" is often used as an abbreviation for testosterone, a Schedule III controlled substance. Further, testosterone and many of the products offered on the Subject Website are commonly used within the bodybuilding/fitness community to increase muscle and enhance physique.

from the Subject Website, which equaled $200 for the products (UC purchase 3). Your affiant sent a screen shot of the products ordered and proof of payment to confirm An invoice was subsequently received from Hoover Pilot Car Service; and while similar, this time the invoice line item stated "MJR-Base Price (1)." Payment was made to Hoover Pilot Car Service through a UC credit card. Your affiant then sent a screen shot of the products ordered and proof of payment to madisonjamesresearch@gmail.com to show the substitute order was placed, as instructed.

62.     UC purchase 3 was received on or about August 8, 2023. The package's return address was "C.P. 504C East Broad Avenue Rockingham NC 28379" (SUITE C). The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida. The contents of the package were shipped using the same modus operandi of packing to that of the UC purchases 1 and 2, using multiple USPS shipping supplies.

63.     The package contained 10 vials that were labeled as "TESTOSTERONE ENANTHATE 300mg" at 10ml each vial. The vials' labels displayed the brand FITZ Scientific (see photos below[19]). They did not display an "RX Only" statement but did state "DR. AUTH REQUIRED."

---

[19] The photos were cropped from the original to fit the page.

 

64.     On September 15, 2023, your affiant received a report from the FCC regarding testing that was completed on samples from UC purchase 3. The items were determined to contain testosterone enanthate. There were no additional APIs, controlled substance, or steroids identified.

65.     During the course of the investigation your affiant also conducted UC activity involving the website lp3health.com, as described below.

66.     On or about April 27, 2023, your affiant, using a fictitious persona and email, initiated a test purchase from the LP3health.com website for Ivermectin capsules. At checkout the payment method selected at checkout was "credit card payment."

67.     Following the order placement, an order confirmation was received from info@lp3health.com. Separately, an invoice indicated it was from "LP3 298 Hickory Street Rockingham, North Carolina 28379 United States," and provided the contact leondaspaul3@gmail.com. A second email from info@lp3health.com included a web link to make payment through Stripe. No payment was made for the order and no products were received.

68.     On or about August 9, 2023, your affiant placed an undercover purchase (herein after "UC purchase 4") for one bottle of Modafinil and one bottle of Clenbuterol 250mcg x 30ml tincture, including one bottle of Modafinil, from the website lp3health.com. The method of payment chosen was credit card, which indicated an invoice would be received later. An email confirmation of the order was received from info@lp3health.com.

69.     During the purchase it was noted that the web page for Modafinil claimed "Modanifil Capsules are a revolutionary new product designed to improve alertness and focus. The capsules contain a unique blend of natural ingredients, including caffeine, guaran, and ginseng, that work together to help increase energy levels and improve concentration. Modanifil Capsules are easy to take, with no unpleasant side effects and are suitable for both adults and children." There were no disclaimers on the web page about the product being for research purposes only.

70.     Further, the web page for Clenbuterol made statements to the effect that the product was for research purposes only. However, the page also made the claim "Clenbuterol 250mcg x 30ml is a powerful and effective weight loss supplement that helps to burn fat and increase muscle mass. It is a fast-acting formula that helps to boost metabolism and energy levels, while also suppressing appetite. It is easy to use and comes in a convenient 30ml bottle, making it ideal for

those looking to lose weight quickly and effectively. Its key features include fat burning, improve muscle mass, and increased energy levels."

71.     A subsequent invoice was received via email that identified the seller as "PRL 298 Hickory St Rockingham, North Carolina 28379[20]." The description of the purchase was "LP3-6321." Payment for the purchase was made using a credit card through the payment processor Stripe. No doctor's prescription was required or submitted for the purchase of either product.

72.     Your affiant received UC purchase 4 on or about August 18, 2023. The return address on the USPS label was "C.P." at SUITE C. The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida. The contents of package were shipped using the same modus operandi of packing to that of the UC purchases 1-3, using multiple USPS shipping supplies. The products received had MJR Laboratories branded labels on them, and the products appeared similar to the previous UC purchases 1-3 made directly from the Subject Website.

73.     The Clenbuterol 250mcg x 30ml from UC Purchase 4 does not appear to meet the definition of a dietary supplement as defined by the FDCA. Additionally, the product label indicates "THIS IS NOT A DIETARY SUPPLEMENT." The Subject Website markets this product as a "weight loss supplement" despite also indicating that it "is not a drug, food, or cosmetic."

74.     The Subject Website offers a number of products marketed as "supplements" including, Maxx Loads Capsules, MJR Liquifast Ultimate Fat Burner – INJECTABLE, MetaboBOOST Capsules, and Sugar & Carb Blocker Capsules.

---

[20] This is a residential address associated with Leondas Paul.

## SURVEILLANCE

75.     On or about April 26, 2023, law enforcement personnel observed a white Ford F-150 (hereinafter "SUBJECT VEHICLE 1") parked in the driveway of the SUBJECT RESIDENCE. The vehicle had a distinct black push bar installed on the front of the vehicle, which was facing Rosalyn Road.

76.     On or about May 25, 2023, your affiant and other law enforcement personnel conducted surveillance at and around 607 A E Broad Ave, Rockingham, NC 28379. During the surveillance it was observed that individuals were traveling between the address and SUITES B and C. The activity observed was consistent with moving boxes and other items from one location to another.

77.     One of the vehicles used to move items between the two locations was a blueish grey minivan, identified by NC license plate EER7994, (hereinafter "SUBJECT VEHICLE 2"). This vehicle was observed to be operated by an unknown male and was surveilled going to multiple locations, to include a branch of the State Employees Credit Union.

78.     A white pickup truck, identified by NC license plate RCH2040, was being operated by a male and was observed traveling between the former Copy Proz location and the SUBJECT PREMISES. North Carolina driver records indicated that Leondas Paul III is a registered owner of this vehicle.

79.     On that same day, agents recovered trash that was discarded outside of 607-A E Broad Ave. Items discovered in the trash included an Amazon shipping pouch with a USPS shipping label addressed to Mark Meland at the SUBJECT RESIDENCE. Other items included order forms for various customers, which were consistent with products offered for sale on the Subject Website by Madison James Research. One particular order form was for Elite Supplement

29

Center 1055 Hamburg Tpk Wayne, NJ 07470, dated May 12, 2023. The order was for 57 total units, of which the order included three units of sildenafil, four units of "Tad/Sid combo," and one unit of tamoxifen. This business has received multiple packages from Madison James Research, including more recently from SUITE C, as described further below.

80.     On or about June 6, 2023, agents recovered trash from a dumpster located in the parking lot of 504 E Broad Ave, across from SUITE B and SUITE C. Among the items recovered were:

- A bottle of Propylene Glycol[21] with the handwritten marking "677," and containing a trace amount of an unknown liquid.

- A bottle of Propylene Glycol with the handwritten marking "Clen[22]," containing a trace amount of an unknown liquid.

- A bottle of Everclear grain alcohol with the handwritten marking "Tad/Sild[23]," containing a trace amount of an unknown liquid.

- Printouts of email order confirmations, which resembled email confirmations received from UC purchases 1 and 2. The most recent order was dated June 2, 2023.

- Capsules with an unknown white powder.

81.     Other items observed and photographed, but not recovered, included an empty box for 100 insulin syringes, empty glass vials and metal crimp tops, eight additional bottles of

---

[21] FDA has classified propylene glycol as an additive that is "generally recognized as safe" for use in food. It is used to absorb extra water and maintain moisture in certain medicines, cosmetics, or food products. https://pubchem.ncbi.nlm.nih.gov/compound/1030

[22] "Clen" is a nickname or "street-term" often used for Clenbuterol. Clenbuterol Hydrochloride is an ingredient in the veterinary medicine sold under the proprietary name Ventipulmin Syrup.

[23] This appears to be a reference to the API Tadalafil and Sildenafil.

Propylene Glycol with written markings, multiple bottles of "Alkalol Nasal Wash Mucus Solvent & Cleaner," and boxes with labels indicating they were shipped to Mark Meland, Leon Paul and/or Copy Proz at 607-A E Broad Ave Rockingham, NC 28379 (or a similar variation of those names and address).

82. On or about July 7, 2023, law enforcement personnel conducting surveillance at the SUBJECT PREMISES observed SUBJECT VEHICLE 1 parked near SUITE C of the premises. An individual standing near the doors of SUITE B and SUITE C appeared to be Meland, based on known photographs and physical surveillance.

83. On or about August 8, 2023, agents conducted surveillance and photographed or recovered trash from a dumpster located in the parking lot of 504 E Broad Ave, closest to the SUBJECT PREMISES. Among the items recovered or photographed, included:

- A box with the FedEx shipping label from "Shipping Department Capsuline 3236 SW 30th Ave Dania Beach FL 33312 US," and addressed to "Mark meland 504 East Broad Avenue Suite C Rockingham NC 28379." The ship date on the label was July 13, 2023. Printing on a Capsuline box identified the package as "Empty Hard Gelatin Capsules."

- Labels for "BA Water 5ml" with the company name and logo for FITZ Scientific (see photos below).



- A box labeled "Amazon Propylene Glycol 4 Pack of 05054."

- Sheets of printed labels for MJR Laboratories T3 product, and Pure Research Labs Clenbuterol product (see photos below[24]).

---

[24] This photo was cropped from its original to fit the page better.

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 32 of 66



84.     During surveillance conducted throughout the investigation, it was observed that SUITE A had no signage on the door or at the large sign along East Broad Ave, to indicate that Marks Gun and Ammo was operating at that location, despite that same large sign listing other businesses located at that address, including Copy Proz.

85.     Further, there was also no sign on the door of SUITE A to indicate when the business was open or closed or hours of operation. No one that appeared to be a customer was observed entering or exiting SUITE A, nor were any persons carrying items that could be described as a firearm.

86.     Similarly, SUITE B had no signage identifying the name or nature of the business operating at that location. SUITE B did have a sign to indicate when the suite was open or closed.

Case 1:23-mj-00385-JLW   Document 1-1   Filed 09/19/23   Page 33 of 66

**Google Search Warrant**

87.     On or about May 10, 2023, a search warrant was issued out of the Eastern District of North Carolina to search Google accounts associated with Madison James Research and Copy Proz (herein after the "Subject Accounts"). A review of the records revealed the following:

88.     Internet search history for components related to drug manufacturing, to include on April 5, 2023 searches for "separated 00 capsules," "size 00 clear empty gelatin capsules separated capsule – China," and "PureCapsUSA – 1,000 Separated Gelatin Size 00 Capsules (Green…".

89.     Internet search history included queries about steroid and testosterone calculators on or about March 28, 2023.

90.     Internet search history for the proper dose for a variety of encapsulated products, including a search for "proper dose modafinil capsules," on or about February 15, 2022.

91.     The e-mails contained discussions regarding proper dosing, including:

- In an e-mail chain spanning January and February 2023, referencing an order for GLP-1 Semaglutide, a customer asked, "Can you help me with the dosage for tirzepatide?" The response from madisonjamesresearch@gmail.com was "We can't by law. Google search it. Thanks."

- In an e-mail chain dated October 13, 2022, a customer complained, "What dosage should that be ran at? Bc I have injected .5mg and haven't felt any effects and it's been within the time frame." Later in that e-mail chain, madisonjamesresearch@gmail.com responded, "It's not that they were not any good. I was amazed at the results from the old ones. I'm just saying, these

34

are more pure and should be able to research with the same dose at get the results you are expecting".

92. The emails contained discussions with customers about how and why the drugs were being used:

- In an e-mail chain spanning March and April 2023, referencing IGF, a customer asked "Which one of these peptides is for inflammation research? I saw a video about 2 that some doctors where using to help patients with neck disk issues. They were using them together. Over half of the patients claim they had wonderful relief but I cannot find the video again and I don't know which two it would be." The response from madisonjamesresearch@gmail.com was "TB500 and BPC is best for that. We carry both".

- In a September 29, 2021 email chain, a customer asked "My bottle of collagen says for research only not human consumption?" The response from Madison James was "Yes, we put that on all products to protect ourselves from the FDA. All research companies do as well".

- In an October 11, 2022 email chain, a customer stated "Hey guys, Just wanted to let you all know that you may want to check the quality control of your glp-1 semaglutide 10mg. On my last two orders, the most recent one and the one prior, the compound did not work. At the normal 2.4 mg dose, there was no feeling of fullness or delayed gastric emptying. My appetite was the same before, during and after administration. I even upped the dose both times to 5mg (.5cc after dilution with 1cc bac water,) and nothing. Not looking for any

freebies or anything, just bringing it to your attention in case you guys got a bad batch or something. Everything else I ordered worked fine. Thanks" and madisonjamesresearch@gmail.com responded "What color were the tops on the vials?"

93. The emails contained discussions about FDA regulatory powers:

- An email from "Madison James" (madisonjamesresearch@gmail.com) to "Leondas Paul" (Leondas.Paul@outlook.com) stated: "Yes. Perhaps a simple disclaimer that it "may" prevent viral infection. Make a statement that starts off something like: "In today's day in age (or with the world currently the way it is), even the healthiest individuals could use a little booster to their immune system. Immunity Caps MAY provide that extra boost. This statement is only general health advice, and is in no way intended to diagnose, treat, or prescribe." Make NO mention to the 19. I would then run it past an attorney. Because yes, the FDA has an armed division and will run up your behind."

- In a March 26, 2021 email chain between "Madison James" (madisonjamesresearch@gmail.com) and "Noah Rasdon" (fattofittest@yahoo.com), which started with Rasdon placing on order for multiple products, to include Tadalafil, Sildenafil, and Tamoxifen, the conversation also stated, "You hear and know if this is true about FDA" and Madison James responded "I know a lot has been going on. We just have to be careful and stay off of Facebook and social media."

94. The emails contained discussions about the manufacturing of products:

36

- An email chain starting on or about November 4, 2021 between madisonjamesresearch@gmail.com and a customer who made multiple orders throughout the email chain. During the back-and-forth communication, the customer inquired how many capsules Madison James Research can make at one time. madisonjamesresearch@gmail.com responded they can make "600 in 15 minutes," and "I have 6 of the semiautomatic machines".

95.     The Subject Accounts were used to order a variety of the raw API and products sold by Madison James Research.

- On or about September 21, 2022 a Subject Account was used to send proof of payment to a source of supply for "hgh[25]" kits. The image of the payment shows a wire was sent for $4,600, the originator was Nancy Hoover Terry, and listed her residential address. According to the EXIF[26] data from the image, it was taken with a device made by Apple.

- On or about September 29, 2022, a Subject Account was used to send proof of a BTC[27] payment to a source of supply for "100 x BPC157 5mg 100 x TB500 5mg." The supplier had previously provided the wallet 17Qso6oM4kPt4qwLmtZMfZymFFkkpTMrKg to send the BTC to. The product was being shipped to Copy Proz at 607A East Broad Avenue. The attached image of payment showed a cell phone was used to take a picture of another cell phone, which had been used to send the payment.

---

[25] Hgh is a common acronym for human growth hormone, which is an API in certain FDA regulated products.
[26] Exchangeable Image File Format (or EXIF) is data that is embedded into digital photographs when they are created. This data can include information such as identification of the device make, model and manufacturer; where the photograph was taken; and device settings.
[27] BTC is a commonly recognized acronym for Bitcoin, a form of digital currency.



- On or about March 7, 2023, as part of ongoing email chain, a Subject Account sent a proof of payment to a source of supply. The order consisted of a variety of products, to include Semaglutide and one kilogram of "test C." An image of the payment shows a wire was sent for $10,210 from the bank account of "Mark Meland Sole Prop DBA Copy Proz." The EXIF data from the image, it was taken with a device made by Apple.

96.    An email account associated with Noah Rasdon, the owner/operator of Magic Nutrition, routinely sent emails for orders to a Subject Account. The orders are often on behalf of a third-party customer. These orders included Semaglutide and HGH.

38

97. On or about June 9, 2022, Rasdon forwarded an FDA-OCI Cybercrime Investigations Unit ("CcIU") abuse complaint[28] that was sent by email to Champion Labz, a company that was identified as operating a website that was offering misbranded and unapproved new drugs. Of the specific drugs referenced, included "Ibutamoren/Nutrobal MK-677." The investigation revealed this be a true copy of an email abuse complaint sent to Champion Labz.

98. Emails sent from the Subject Accounts also indicate an attempt to hide the nature of payments for products. In general, instructions were often given to purchasers to use deceptive descriptions of the order, in order to not be scrutinized by payment processors. For example:

- In an email chain beginning on April 18, 2023, Madison James provides instructions for payment through Venmo and states "Please put for Groceries Donation No Order Numbers. Venmo shuts us down when they see stuff about orders. Just payment and email it to us! Any order info your payment will force us to refund and delete your order. Thanks."

- In an email chain beginning on April 19, 2023, Madison James also instructed for a customer to state the purchase was related to "Groceries Donation," for a payment being made through the processor CashApp.

99. Further, email confirmations for orders corroborated information from payment processors or other peer-to-peer payment applications, as previously mentioned. For example,

- On or about August 1, 2021, an order confirmation was sent for the purchaser "Brian Emory" for Tamoxifen Capsules, with the total amount $27.50.

- On or about January 20, 2023, an order confirmation was sent for the purchaser "Matt Houser" for Tadalafil Capsules, with the total amount of

---

[28] It is your affiant's understanding that an abuse complaint is an FDA-OCI letter to an entity, informing the entity that their products are being sold in violation of the FDCA.

$68.00. Houser is a repeat customer of Madison James Research, and was previously instructed to use "Groceries Donation" as a description for a purchase Houser made in September 2020 while paying through Venmo for that earlier purchase.

## Business Records

100.   On or about May 17, 2023, your affiant received records from Amazon regarding an Amazon account associated with Meland. These records from Amazon revealed:

- Meland has an account registered with the email address copyproz@gmail.com. Meland added the address for the SUBJECT RESIDENCE to the account on January 26, 2023.

- Between December 19, 2019 and April 8, 2023, Meland placed 66 orders for propylene glycol, often for multiple containers or quantities. Since January 26, 2023, about 34 of 35 of those orders have gone to the SUBJECT RESIDENCE. The remainder and all the other orders before that day were shipped to 607 E Broad Ave Ste A Rockingham, NC 28379.

- Between December 22, 2019 and March 28, 2023, Meland placed 53 orders for Alkalol Solution, often for multiple units of the product. The three most recent orders were shipped to either the SUBJECT RESIDENCE or 607 E Broad Ave A Rockingham, NC 28379.

- Meland also ordered other items to the SUBJECT RESIDENCE that are consistent with the Madison James Research business, including multiple orders for glass vials with plastic rubber stoppers.

40

- Further, there were orders shipped to 607 E Broad Ave Ste A Rockingham, NC 28379 that are consistent with Madison James Research business, and indicative of manufacturing or packing. These orders included gelatin capsules, flip off aluminum caps, vial crimper, nasal spray bottles, and glass eye droppers.

101.   On or about July 13, 2023, your affiant received records from FedEx regarding an account under the name Copy Proz. The records from Fedex revealed:

- The account changed the street address of record from 607 A E Broad Ave to SUITE C.
- The account was used to ship packages to Elite Supplement Center at 1055 Hamburg Tpk Wayne, NH 7470 on or about May 16, 2023, May 23, 2023, June 6, 2023, and June 20, 2023. The latter of which used the shipping address for SUITE C.

102.   On or about April 18, 2023, your affiant has received records from Bank of America pertaining to accounts held by Meland or the Subject Businesses. Meland opened up an account under the business name "Mark Meland Sole Prop DBA Copy Proz," on or about September 2, 2022. The records further showed that this account has received over $500,000 in credits from Magic Nutrition.

103.   On August 31, 2023, your affiant spoke with a representative of Bank of America who confirmed that Magic Nutrition was sending ACH payments to Meland. However, beginning in June 2023, Rasdon began sending wires to Meland from a different account that was in Rasdon's personal name. Rasdons' wires accounted for over $200,000 going into Meland's account from June to August 31, 2023.

104. Records from the United States Postal Service indicated that shipments of USPS shipping materials were sent to "Mark Meland Copy Proz," in 2023.

- From January to on or about May 9, 2023, Meland received supplies at the address 607 E Broad Ave Ste A Rockingham, NC 28379.

- Beginning on or about June 5, 2023, the shipping supplies began being shipped to Meland at SUITE B. The supplies ordered consisted of USPS Priority Mail envelopes and boxes, and are consistent with the materials used to package and ship the UC purchases previously mentioned.

105. During the investigation your affiant has received records from various payment processors or applications for accounts associated with Madison James Research, Meland, or other subject of the investigation. The records revealed transactions coming into the accounts that had descriptions related to order numbers or disguised as groceries, or grocery donations. The latter of which was at the direction of Madison James Research, as described further below.

106. Records received from Block Inc. revealed two accounts with the peer-to-peer payment service Cash App, which were set up with the names Nancy Hoover and Nancy Terry (identified by Cash App ID tokens C_06ctk8md3 and C_s9cyphms9, respectively). Both accounts received multiple payments which used subject lines that were indicative of being payments for orders from the Subject Website. The account was also used to disperse crypto currency funds to a known source of supply for raw chemicals, including API. For example:

- On or about January 20, 2023, account C_06ctk8md3 received a payment of $68, with the subject line "groceries" from the sender "Matt Houser." This corresponds to Google records, referenced above.

- On or about August 1, 2021, account C_s9cyphms9 received a payment of $27.50, with the subject line "order #27711," from the sender "Brian Emory." This corresponds to Google records, referenced above.

- From about August 26, 2022 to January 24, 2023, account C_06ctk8md3 sent BTC to an external wallet at the address 17Qso6oM4kPt4qwLmtZMfZymFFkkpTMrKg. Google records show that this address was provided by a source of supply, as previously referenced.

107.    The records further show that the account C_06ctk8md3 had a withdrawal of BTC 0.00970281, including a fee of BTC 0.00000440, the external address of bc1qytuxyfv8069q4sv7l55e8aquh6qh882ev6sq3p, on, or about, November 4, 2021. An analysis of the publicly available blochchain revealed that from about March 13, 2021 and September 5, 2023, the address bc1qytuxyfv8069q4sv7l55e8aquh6qh882ev6sq3p has received around $341,209 (estimated to be about 10 BTC, as of September 5, 2023). About 5 BTC of which was then sent to a wallet at the exchange Kraken.

- The address bc1qytuxyfv8069q4sv7l55e8aquh6qh882ev6sq3p was still holding about 5 BTC, as of September 5, 2023. Further, this address is not associated with a cryptocurrency exchange, which is indicative that the address belongs to an offline or personally controlled wallet.

108.    Records from PayPal revealed a Venmo account operated under the name Nancy Hoover. This account received payments primarily in 2020, with numerous transaction descriptions indicative of orders for Madison James Research. This included descriptions such as order numbers, "Madison James," "MJR ChemsOrder# 18317," and "Order: 19050 please confirm when received."

109.    Starting in June 2023, your affiant began receiving records from NorthAmerica Bancard. According to the records, a merchant processing application for Copy Proz was declined on December 6, 2019. A merchant processing application for Madison James Research was declined on April 28, 2022. The latter application had declared that "Merchandise/Services Sold" was "Research Products."

110.    The records further show that on or about April 29, 2022, a merchant processing application for Hoover Pilot Car Service was digitally signed on or about April 29, 2022. Nancy Terry was identified as the owner and the location and mailing address was listed as Terry's residence. The application declared the "Merchandises/Services Sold" was "SERVICES." The merchant account was identified as account number 3130033563778.

111.    The records further showed that disbursements from NorthAmerica Bancard initially were going to an account controlled by Terry at Bank of America. Starting around July 2022 and until at least May 2023, the deposits were going to an account at First Bank, under the name "NANCY H TERRY DBA HOOVER PILOT CAR SERVICE," account number 0341014192.

112.    On or about June 30, 2023, your affiant received records from eDebitDirect, which is an electronic merchant check processor. The records revealed Meland operates an account under the merchant name "Mark Meland DBA Madison James Research." The records revealed payments processed for Meland under this account. For example, on January 4, 2023, the account processed the following payments:

| Payer | Merchant | Amount |
|---|---|---|
| Clifford Collier | Mark Meland dba Madison James Research | $75.00 |
| Albert Smith | Mark Meland dba Madison James Research | $259.00 |

44

| Warren Anderson | Mark Meland dba Madison James Research | $128.00 |
|---|---|---|
| | Total | $462.00 |

- Emails from the Madison James Research Google account confirmed purchases from Madison James Research were made by the payers listed, on January 4, 2023, for the amount listed.

- On January 5, 2023, $462.00 was deposited into a bank account controlled by Meland at Bank of America.

113.   On or about September 8, 2023, your affiant received records from First Bank which showed that account 0341014192 was opened by Terry on, or about, July 7, 2022. The records also showed that credits were entering the account from 3130033563778, which matched the amounts reported by NorthAmerica Bancard.

114.   Terry's account (ending x4192) has been used to make payments to companies whose names appear to indicate they are suppliers of components that could be used in drug manufacturing. For example, in August 2023, the account made payments to the companies Med Lab Supply and Capsule Supplies. Further, the account had a number of cash withdrawals from automated teller machines ("ATM") each month. For example, in August 2023, the account made eight ATM withdrawals of $602 each, ($4,816 total).

**Pole Camera Surveillance**

115.   On or about June 7, 2023, FDA-OCI installed a video camera to conduct video surveillance of the SUBJECT PREMISES. The following general observations were made from the video footage reviewed:

45

116. On the majority of weekday mornings an individual, believed to be an employee of Meland, is regularly observed driving SUBJECT VEHICLE 2. This individual arrives at the SUBJECT PREMISES and the unlocks SUITE B and SUITE C, generally sometime around 8:00 am. Other individuals, believed to be employees, enter SUITE B. These individuals appear to be employees, based on the observation that they drive the same vehicles each day, take breaks around the same time, and generally leave around the same time. The majority of these employees are only observed entering and exiting SUITE B.

117. The activity observed at SUITE A is inconsistent with businesses open to the public. The persons observed entering and exiting these suites are individuals believed to be employees of a Subject Business, and who come from either SUITE B or C. For example:

- On July 10, 2023, two individuals exit Suite B and briefly converse with an individual from Suite C, who was discarding trash. The two individuals then walk to Suite A and enter with what appears to be paperwork. About eight minutes later, the two individuals leave Suite A and return to Suite B carrying a box.

- On July 12, 2023, at approximately 12:30pm two individuals exit a white sedan and enter Suite A. After approximately 8 minutes, one of the individuals leaves and enters Suite B, then returns to Suite A carrying a box. At approximately 1:12 pm a child exits Suite C and walks into Suite B, and then returns after approximately two minutes. At approximately 1:24 pm the same child and Meland exit Suite C and walk into Suite A; they return to Suite C approximately at approximately 1:46 pm, with the child carrying an unidentifiable object.

- On July 31, 2023, two individuals exit Suite B and speak with a third individual who had just parked a white pickup truck. After speaking briefly, the individual from the truck walked into Suite C carrying a plastic bag, and the two individuals from Suite B walked into Suite A. Approximately one minute later, the individual from the trucks exits Suite C and enters Suite A, empty-handed. After approximately two minutes, all three individuals leave Suite A. The individual from Suite C returns with an object in his right hand, and the other two depart in the same vehicle.

118.   SUITE A has little to no foot traffic or activity that would be consistent with the retail sale of guns and ammunition.

119.   The individual driving SUBJECT VEHICLE 2 routinely comes and goes in the vehicle throughout the day. Additionally, the individual has been observed entering and exiting SUITES A-C at various times.

120.   SUBJECT VEHICLE 1 is regularly seen on video at the SUBJECT PREMISES. The vehicles license plate was identified as NC license plate KBF5281. The investigation revealed that this vehicle is registered to Copy Proz. For example:

- On August 2, 2023, two individuals were observed moving objects from a rental moving truck into SUITE A. While doing so, SUBJECT VEHICLE 1 arrives in the parking lot of the SUBJECT PREMISES. Prior to parking, the same two individuals converse with the driver of SUBJECT VEHICLE 1 and then remove three boxes from the bed of the truck. At least two boxes resemble Amazon shipping boxes, based on a distinct logo on the box. One of the boxes is taken into Suite B, and the other two are taken into Suite A.

47

121. Meland is observed at the SUBJECT PREMISES and operating SUBJECT VEHICLE 1.

122. Terry arrives each weekday around 9:00 am and stays in SUITE C for most of the day.

123. As further example to some of the above general observations, on August 14, 2023, SUBJECT VEHICLE 1 arrives at the SUBJECT PREMISES at about 9:18 am. Upon arriving, the rear tailgate of the truck and was open and it was readily visible that a box was in the bed of the truck. After parking, Meland exits the driver's seat and enters SUITE C, along with a child who was a passenger. Shortly after Meland arrived, the individual who was driving SUBJECT VEHICLE 2 that same day, and already at the SUBJECT PREMISES, exits SUITE C, retrieves the box from SUBJECT VEHICLE 1, and delivers the box to SUITE B.

## RECORDS CHECKS

124. According to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Meland was issued a federal firearms license on or about May 26, 2022 for Marks Gun and Ammo. The premises address is SUITE A, and the mailing address was 607A East Broad Avenue Attn Copy Proz Rockingham, NC 28379.

125. The investigation has not located a website or social media profile associated with Marks Gun and Ammo, owned by Meland. Further, there is no reference to Marks Gun and Ammo on common internet mapping applications like Bing Maps or Google Maps.

126. According to the FDA records neither Meland, the Subject Businesses, the SUBJECT RESIDENCE or SUBJECT PREMISES have registered with the FDA as engaged in the manufacture, preparation, propagation, compounding, or processing of drugs. Similarly, there were no Food Facility Registration records associated with the above entities.

## **CONCLUSION**

127.    Based on the aforementioned facts, your affiant believes that Madison James Research is unlawfully manufacturing, selling misbranded and unapproved new drugs, as well as controlled substances through the Subject Website, and the Subject Accounts.

128.    There is evidence that Madison James Research is operating out of SUITE B, to include the receipt of USPS shipping supplies, items located in a trash dumpster at the property, and the presence of individuals believed to be employees of the business.

129.    Further, there is evidence that Meland uses Copy Proz and Marks Guns and Ammo to support the business activity of Madison James Research. Copy Proz has been used to receive shipments of supplies, send payments for API, and is used as the return address of undercover purchases. Items consistent with a printing business, such as labels of MJR Labs, Pure Research Labs, and FITZ Scientific products have been found in a dumpster used by the Subject Businesses. A bank account for Copy Proz has been used to receive proceeds of sales associated with Madison James Research.

130.    Marks Guns and Ammo purports to be located in SUITE A, however the investigation has not found any evidence that this business is engaged in any retail business or public advertising. SUITE A is utilized by Meland or other individuals associated with SUITE B, who are suspected of being employees of Madison James Research.

131.    There is evidence that Meland, his associates and/or employees are involved in receiving and possessing drugs and drug manufacturing supplies, as well as the interstate shipping of drugs.  Despite claims that the products being marketed are for research purposes only, it appears that products are intended to be used as drugs and those disclaimer statements are false and misleading, based on the aforementioned information.

132. Further, there is evidence that Madison James Research is laundering proceeds of the sales by processing transactions for the web-based products via wires under the business name Hoover Pilot Car Service and providing instructions to customers to disguise the nature of the transactions.

133. Based upon the information above, I have probable cause to believe that evidence of the SUBJECT OFFENSES will be found at the SUBJECT PREMISES and SUBJECT RESIDENCE.

/S/ Jeffrey Gruppo
Jeffrey Gruppo, Special Agent
Food and Drug Administration ("FDA")
Office of Criminal Investigations

On this _19th_ day of September, 2023, Special Agent Jeffrey Gruppo, appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

JOEL L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

50

## ATTACHMENT A-1

### Location to be Searched
### 504 East Broad Avenue, Suites A-C, Rockingham, NC 28379

The location is described as multiple-tenant, mixed-use, commercial building. The building is gray in color and identified by a sign stating "Kays" that is on the front of the building facing E Broad Ave. A large sign in the parking lot closest to E Broad Ave identifies the building and advertises for multiple tenants of the building, including Copy Proz. The particular spaces involved in this application are identified as Suites A, B, and C, which are located along the left side of the building when facing the building from E Broad Ave. They are the first three Suites located along the side of the building, and each uniquely identified, as shown below.



[From February 2022]

Specifically, Suite A is identified by lettering on the door stating "504 East Broad Ave. Suite A." Suite B has a mailbox affixed to the exterior wall next to the right of the door identifying it at "504 B." Suite C is identified as by a graphic sign affixed to the door stating "504-C" and "COPY PROZ."

A-1



[Photo of front sign, as of July 2023]



[Suite A]

A-2

 

[Suite B]

Further



[Suite C]

A-3

The search would also include SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2, if present at the 504 E Broad Ave. Rockingham, NC 28379. More specifically, SUBJECT VEHICLE is described as a white Ford F-150 pickup truck, identified by North Carolina license plate KBF5281. According to the North Carolina vehicle records, the vehicle is 2022 Ford F-150 supercrew, registered to Copy Proz LLC, and is further identified by vehicle identification number ("VIN") 1FTFW1E51NKD17073.



[SUBJECT VEHICLE 1]

SUBJECT VEHICLE 2 is described as blueish grey minivan, identified by North Carolina license plate EER7994. According to North Carolina vehicle records, the vehicle is registered to Hope Gould of Rockingham, North Carolina, The vehicle is further described as a 2002 Chrysler Voyager with VIN 1C4GJ25302B736437.



[SUBJECT VEHICLE 1 and 2]

A-4



[SUBJECT VEHICLE 2]

A-5

## ATTACHMENT A-2

### Location to be Searched
### 192 Rosalyn Road Rockingham, NC 28379

The location is a as a two-story single-family residence, gray to beige in color with white trim, and dark exterior shutters. The residence's front door faces Rosalyn Road, and the garage is on the right side of the residence, when facing the front of the house. The street number of the address is affixed to the mailbox, which is located at the end of the driveway along Rosalyn Road.



[Photo from May 2023]



[Photo from February 2022]

A-6

## ATTACHMENT B

### Particular Things to be Seized

All records, evidence, fruits, and instrumentalities relating to violations of 21 U.S.C. §§ 331(a), 331(c), 331(d), 331(dd) 331(k), 331(p), 333(a)(1), 333(a)(2) ; 18 U.S.C. § 1341; 18 U.S.C. § 371; 21 U.S.C. § 841; 21 U.S.C. § 856 ; and 18 U.S.C. § 1956 ("SUBJECT OFFENSES")  as referenced in the attached affidavit, and those violations involving Mark Meland, Nancy Hoover Terry, Noah Rasdon, Leondas Paul III, Madison James Research, Copy Proz LLC, LP3 Research, Magic Nutrition, Pure Research Labs, and Marks Gun and Ammo in the form of the following:

1. Any and all bottles or containers containing misbranded or unapproved new drugs, including drug components, and food or dietary supplements;

2. Any suspected controlled substances;

3. Any and all drug labels and labeling and communications relating to drug labels and labeling; including, but not limited to labels bearing the names Madison James Research, MJR Laboratories, Pure Research labs, of LP3 Research;

4. Any and all raw materials or ingredients used to manufacture, prepare, propagate, compound, process, or distribute any drug, or food or dietary supplement;

5. Any tools, equipment, devices, materials, or other paraphernalia used to manufacture, prepare, propagate, compound, process, package, repackage, label, or distribute any drug, or food, or dietary supplement; including, but not limited to encapsulating machines or other manufacturing equipment;

6. All records of communications and contacts including, between, or among Mark Melan, Nancy Hoover Terry, Noah Radson, Leondas Paul III, Madison James

Research, Copy Proz LLC, LP3 Research, Magic Nutrition, Pure Research Labs, and Marks Gun and Ammo evidencing the SUBJECT OFFENSES;

7.    All employee and personnel records for Madison James Research, Copy Proz LLC, LP3 Research, Magic Nutrition, Pure Research Labs, and Marks Gun & Ammo;

8.    All records of communications or records related to any misbranded or unapproved new drugs;

9.    All records, including documents, records, correspondence, memoranda, photographs, video, items, notes, envelopes, and receipts pertaining to:

  a.  Any misbranded or unapproved new drug, including drug components; food; or dietary supplement;

  b.  Any controlled substances;

  c.  Facilities used to manufacture, compound, propagate, repackage, label, or process misbranded or unapproved new drugs or controlled substances;

  d.  Cash receipts, deposits, and withdrawals, bank statements, ATM transactions, and blank, filled-out, and cashed checks;

  e.  Sources of supply for drugs, as defined by the FDCA; controlled substances, or other materials used to manufacture, process, package, or ship any drugs or controlled substances;

10.   Records of proceeds of, or payments related to, or communications related to the SUBJECT OFFENSES;

11.   Books, records, receipts, notes, ledgers and other papers concerning the manufacturing, preparation, propagation, compounding, or processing of any drugs, as defined by the FDCA, or controlled substances;

B-2

12. Financial records, including expenses incurred in obtaining the equipment and items necessary for the manufacturing, transportation and/or distribution of misbranded drugs or controlled substances, income derived from the sales of misbranded drugs or controlled substances, as well as records of legitimate income or lack thereof, and general living expenses;

13. Any and all records pertaining to indicia of ownership, use, control, or indicia of occupancy of the SUBJECT RESIDENCE, SUBJECT PREMISES or Subject Businesses as defined in the accompanying affidavit;

14. Records and information relating to the purchase and sale of drugs on LP3health.com, www.madisonjamesresearchchems.com, or www.pureresearchlabs.com;

15. Records and information related to the ownership, control, maintenance, use, or editing of the websites LP3health.com, www.madisonjamesresearchchems.com or www.pureresearchlabs.com;

16. Records and information related to any certificates or business licenses or registrations held by Mark Meland, Nancy Hoover Terry, Leondas Paul III, or the Subject Businesses;

17. Safes, key-lock strong boxes, suitcases, locked cabinets, and other types of locked or closed containers used to secrete and store materials, books, records, documents, financial instruments, and other items of the sort described in subparagraphs (a) through (k) above. Law enforcement officers executing this warrant are specifically authorized to open any such locked safes or containers, including by force, if necessary;

B-3

18. United States currency in excess of $1,000, cryptocurrency also known as virtual currency, including bitcoin, stored on electronic or paper wallets or other means, cryptocurrency private keys and recovery seeds, gift cards, cash cards, and records relating to income derived from the transportation, sales, and distribution of misbranded drugs or controlled substances; and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of the sale of misbranded drugs or controlled substances;

19. Receipts, notes, ledgers, records, programs, and applications relating to Bitcoin and other cryptocurrencies;

20. Records reflecting names, addresses, telephone numbers, internet monikers, and other contact or identification data for others involved in the exchange of bitcoin and other cryptocurrencies;

21. With respect to any digital device used to facilitate the above-listed violations or containing evidence falling within the scope of the categories of items to be seized described herein:

    a. Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

B-4

b.   Evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.   Evidence of the use of virtual private networks and the TOR network including, but not limited to, access of Darknet marketplaces;

d.   Evidence of the attachment of other devices;

e.   Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

f.   Evidence of the times the device was used;

g.   Passwords, encryption keys, PGP keys, recovery seeds, and other access devices that may be necessary to access devices;

h.   Applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

i.   Records of or information about Internet Protocol addresses used by the device;

j.   Records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

22.   Any and all cryptocurrency, to include the following:

a.   Any and all representations of cryptocurrency public keys or addresses, whether in electronic or physical format;

B-5

b. Any and all representations of cryptocurrency private keys, whether in electronic or physical format;

c. Any and all representations of cryptocurrency wallets or their constitutive parts, whether in electronic or physical format, to include "recovery seeds" or "root keys" which may be used to regenerate a wallet.

23. The United States is authorized to seize any and all cryptocurrency by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

24. The United States is further authorized to copy any wallet files and restore them onto computers controlled by the United States. By restoring the wallets on its own computers, the United States will continue to collect cryptocurrency transferred into the wallets seized as a result of transactions that were not yet completed at the time that the devices were seized.

25. As used herein, the terms "records," "documents," "programs," "applications," "materials," and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

26. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

B-6

27. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

28. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media; such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

29. For any computer or storage medium whose seizure is otherwise authorized by the search warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER").

   a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files; saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

B-7

b.   Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.   evidence of the lack of such malicious software;

d.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

e.   evidence of the use of virtual private networks and the TOR network including, but not limited to, access of darknet marketplaces;

f.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

g.   evidence indicating the computer user's state of mind as it relates to the crime under investigation;

h.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

i.   evidence of counter-forensic programs (and. associated data) that are designed to eliminate data from the COMPUTER;

j.   evidence of the times the COMPUTER was used;

k.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

l.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

B-8

m. records of or information about Internet Protocol addresses used by the COMPUTER;

n. Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

o. Routers, modems, and network equipment used to connect COMPUTERs to the Internet; and

p. contextual information necessary to understand the evidence described in this Attachment B.

30. During the execution of the search of the SUBJECT PREMISES described in Attachments A-1 and A-2, law enforcement personnel are authorized to press the fingers (including thumbs) of individuals found at the SUBJECT PREMISES to the Touch ID sensor of any Apple brand device(s), such as an iPhone or iPad, found at the SUBJECT PREMISES and to hold the digital devices found at the SUBJECT PREMISES in front of the face of individuals found at or in the SUBJECT PREMISES with the individuals' eyes open to activate the facial, iris, and/or retina recognition features for the purpose of attempting to unlock the device via Touch ID, Face ID or similar biometric features in order to search the contents as authorized by this warrant.

31. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic

B-9

data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FDA-OCI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

32. Any locked container such as a safe may be searched for the property to be seized set forth herein.

B-10